**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

GEORGE E. BEASLEY, JR.,

Plaintiff,

v. Case No. 6:20-cv-883-WWB-EJK

WELLS FARGO BANK, NA and LILAC GROUP - SANFORD, LLC,

Defendants.
_______________________________/

**ORDER**

THIS CAUSE is before the Court on Defendants' Motions for Summary Judgment (Doc. Nos. 169, 173), Plaintiff's Responses (Doc. Nos. 182, 188), and Defendants' Replies (Doc. Nos. 195, 207). Also before the Court are Plaintiff's Motion for Partial Summary Judgment (Doc. 174), Defendants' Responses (Doc. Nos. 184, 185), and Plaintiff's Replies (Doc. Nos. 197, 200).

## I. BACKGROUND

It is undisputed that around midnight on November 17, 2018, Plaintiff, George E. Beasley, Jr., parked his car in the drive-thru lane of Defendant Wells Fargo Bank, NA's ("**Wells Fargo**") bank located in Sanford, Florida and walked to the Wet Spot bar across the street. (Doc. 1, ¶ 25; Doc. 169-7 at 75:17–18). Roughly thirty minutes later, Plaintiff was returning to his car when he was shot in the head by a man later identified as Andraus Lee.[1] (Doc. 1, ¶ 26; Doc. 169-4 at 18:24–19:3).

---

[1] The shooter was prosecuted in the Circuit Court of the Eighteenth Judicial Circuit in and for Seminole County, Florida. *See generally* Seminole Cnty. Clerk, *Criminal Case. No. 2018CF003657A*, https://courtrecords.seminoleclerk.org/criminal/crim_details.aspx?

Officer Otto Garcia and Sergeant Sanjuanita Justiniano arrived on scene within minutes of the incident. (Doc. 169-5 at 9:4–21, 10:8–20; Doc. 169-8 at 8:16–23, 13:2–22). Plaintiff was found lying in a downward position with his face on the concrete and blood coming from his head. (Doc. 169-5 at 9:18–21, 17:10–18:24; Doc. 182-27 at 2). Sergeant Justiniano and Officer Garcia rolled Plaintiff onto his back and began performing CPR until emergency services arrived. (Doc. 169-5 at 9:14–21, 18:25–19:9; Doc. 169-8 at 13:2–16, 14:22–15:1, 16:15–17). It did not appear that Plaintiff had been moved before they intervened. (Doc. 169-8 at 87:15–88:1).

When emergency services adjusted their equipment to aid Plaintiff, they alerted Sergeant Justiniano to a firearm exposed in Plaintiff's sweater pocket. (*Id.* at 17:13–25, 84:16–23). Sergeant Justiniano retrieved the firearm from Plaintiff's pocket, discovered it was loaded, and secured it in the trunk of her car. (*Id.* at 18:1–10, 18:22–19:15, 84:16–85:6; Doc. 182-22 at 19). Thereafter, Sergeant Justiniano turned the firearm over to the crime scene technician. (Doc. 169-7 at 42:18–43:14; Doc. 169-8 at 19:11–22). Police also found baggies of suspected marijuana and cocaine on the pavement near Plaintiff. (Doc. 169-7 at 37:5–18, 38:8–15). He was transported to the hospital, where he received medical treatment for his injuries. (Doc. 173-15 at 1; Doc. 182-28 at 2). As a result, Plaintiff claims he suffers from memory loss and does not have an independent recollection of what happened. (Doc. 169-2 at 16:17–17:25, 44:25–45:2).

Plaintiff alleges that when the shooting happened, the subject parking lot was owned by Defendant Lilac Group-Sanford, LLC ("**LGS**") and managed and controlled by

---

d=PyiHYRxzXGQhhIE%2bcRH7Hw%3d%3d (last visited Jan. 18, 2022) ("**state court proceeding**").

Wells Fargo. (Doc. 1, ¶ 6). LGS disputes it was the owner of the parking lot at that time. (Doc. 173-11 at 77:22–25). The parking lot was designed only for use by Wells Fargo customers and was not open to the public after business hours. (Doc. 169-6 at 29:9–13; Doc. 182-11 at 42:9–42:16). In fact, Wells Fargo had signs posted on the property, including near the drive-thru lanes where Plaintiff parked his car, stating, "drive-up services Wells Fargo accountholders only," and "parking for Wells Fargo customers only." (Doc. 169-6 at 34:9–14; Doc. 169-7 at 60:17–61:7; Doc. 182-11 at 42:17–43:10). Plaintiff has never been a Wells Fargo accountholder. (Doc. 169-6 at 31:7–32:1). Nevertheless, the parking lot was frequently used as additional parking for nearby bars and restaurants. (Doc. 169-4 at 39:7–25; Doc. 169-8 at 9:8–12).

Wells Fargo admits that there were no "no trespassing" signs posted on the property, and both Defendants admit never having Plaintiff trespassed from the premises prior to the incident in question. (Doc. 174-17, ¶ 1; Doc. 174-18, ¶¶ 1, 13). There were also no barricades or other obstructions to prevent unauthorized entry into the parking lot. (Doc. 182-11 at 50:10–17). Plaintiff alleges that Wells Fargo knew the parking lot was being used by the public after business hours and that both Wells Fargo and LGS were aware of prior incidents of violence on the premises and surrounding area. (Doc. 1, ¶¶ 20–24; *see generally* Doc. Nos. 182-8, 182-10). Plaintiff reports that in the period between January 1, 2015, and his shooting, the Sanford Police Department recorded 153 calls for service and six reported offenses at the Wells Fargo street address. (Doc. 182-10 at 1–2). And three years prior to Plaintiff's shooting, a bank patron leaving Wells Fargo's ATM was robbed at gunpoint. (Doc. 182-19 at 2). Wells Fargo was aware of a shooting that

occurred in November 2016 near the subject parking lot. (Doc. 169-6 at 73:24–74:12, 290).

## II. LEGAL STANDARD

Summary judgment is appropriate when the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it may "affect the outcome of the suit under the governing law." *Id.* "The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Allen v. Bd. of Pub. Educ.*, 495 F.3d 1306, 1313–14 (11th Cir. 2007). Stated differently, the moving party discharges its burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

However, once the moving party has discharged its burden, "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quotation omitted). The nonmoving party may not rely solely on "conclusory allegations without specific supporting facts." *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985). Nevertheless, "[i]f there is a conflict between the parties' allegations or evidence, the [nonmoving] party's evidence is presumed to be true and all reasonable inferences must be drawn in the [nonmoving] party's favor." *Allen*, 495 F.3d at 1314.

## III. DISCUSSION

Plaintiff brought a two-count Complaint against Defendants for negligence under a theory of negligent security. (*See generally* Doc. 1). All parties filed cross motions for summary judgment. Defendants seek summary judgment on their affirmative defenses and Plaintiff's claims. Plaintiff, in turn, seeks partial summary judgment as to his legal status on the subject premises, the ownership, possession, or control of the subject premises, and Defendants' affirmative defenses.

### A. Affirmative Defenses

Defendants argue that Plaintiff's claims are statutorily barred pursuant to section 768.075, Florida Statutes. At the summary judgment stage, the "defendant has the initial burden of making a showing that the [affirmative] defense is applicable." *Blue Cross & Blue Shield of Ala. v. Weitz*, 913 F.2d 1544, 1552 (11th Cir. 1990). "Once a defendant shows that the applicable [affirmative defense] bars the claim, the burden shifts to the plaintiff to demonstrate that an exception . . . applies." *Id.* at 1552 n.13; *see also Off. of Thrift Supervision v. Paul*, 985 F. Supp. 1465, 1470 (S.D. Fla. 1997).

Wells Fargo and LGS contend that section 768.075, Florida Statutes, precludes Plaintiff from recovering against them for negligence because Plaintiff was engaged in the commission of a felony at the time of his injury. The statute provides:

> A person or organization owning or controlling an interest in real property, or an agent of such person or organization, shall not be held liable for negligence that results in the death of, injury to, or damage to a person who is attempting to commit a felony or who is engaged in the commission of a felony on the property.

Fla. Stat. § 768.075(4) "The plain language of the statute bars recovery for any person who commits a felony on the property, not just a person whose injury arises out of the commission of a felony." *Gubanova v. Mia. Beach Owner, LLC*, No. 12-22319-CIV, 2014

WL 1340988, at *3 (S.D. Fla. Apr. 4, 2014) (quotation and emphasis omitted) (granting summary judgment for the defendant where the decedent was attempting to purchase cocaine in his hotel room at the time he was shot); *see also Kuria v. BMLRW, LLLP*, 101 So. 3d 425, 426–27 (Fla. 1st DCA 2012) (affirming summary judgment for the defendant where the decedent was operating an illegal chop shop and dealing in stolen property in the apartment at the time he was shot).

Under Florida law, a person who has been convicted of a felony and possesses a firearm or ammunition commits a felony in the second degree. Fla. Stat. § 790.23(1), (3). It is undisputed that Plaintiff has been convicted of multiple felonies. (Doc. 169-2 at 37:23–38:5; *see generally* Doc. 173-3). Furthermore, the uncontroverted evidence[2] before the Court demonstrates that Plaintiff was in possession of a loaded firearm at the time of his injury. Plaintiff has failed to direct this Court to any record evidence to the contrary, and this Court is not persuaded by Plaintiff's attempts to create a material issue of fact by misrepresenting the record. This Court is also not persuaded by Plaintiff's meritless argument that after he was shot, it was not possible for him "to possess anything but for a will to live[,]" (Doc. 174 at 19), which Plaintiff has failed to substantiate with any legal authority. Thus, because Plaintiff was engaged in the commission of a felony at the time of his injury by being a convicted felon in possession of a firearm, his claim for negligence is statutorily barred. *See Gubanova*, 2014 WL 1340988 at *3.[3]

---

[2] Plaintiff argues his testimony from the state court proceeding cannot be reduced to admissible evidence. However, because there is sufficient evidence on the record other than Plaintiff's testimony at issue, the Court need not consider its admissibility.

[3] Having determined that Plaintiff's claim is precluded by his violation of section 790.23, Florida Statutes, the Court need not consider Defendants' other arguments

**B. Premises Liability**

Even if Plaintiff's claim withstood Defendants' affirmative defense, Defendants would be entitled to summary judgment on the merits of Plaintiff's claims. To establish a claim of negligence under Florida law, the plaintiff must prove the following elements: (1) a duty, (2) breach of that duty, (3) causation, and (4) damages. *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1339 (11th Cir. 2012). For a negligence action predicated on premises liability, the plaintiff must also show "the defendant's possession or control of the premises and notice of the dangerous condition." *S.Y. v. Wyndham Hotels & Resorts, Inc.*, 519 F. Supp. 3d 1069, 1088 (M.D. Fla. 2021) (quotation omitted); *see also Nicholson v. Stonybrook Apartments, LLC*, 154 So. 3d 490, 494 (Fla 4th DCA 2015) (holding that negligent security cases fall under the umbrella of premises liability). LGS disputes the element of possession or control. At best, there is a material issue of fact as to whether LGS had possession or control of the parking lot at the time of the incident. However, because Plaintiff cannot show a breach of duty, the Court need not address the issue of possession or control.

Under Florida common law, visitors who enter the land or property of another fall within one of three classifications: invitee, licensee, or trespasser. *Post v. Lunney*, 261 So. 2d 146, 147 (Fla. 1972). An invitee is "one who enters upon the premises of another for purposes connected with the business of the owner or occupant of the premises." *Id.* at 147–48 (quotation omitted). An invitee includes one who is on the premises by invitation, either express or reasonably implied, of the owner of the property. *Wood v.*

---

concerning the alleged controlled substances found on the pavement near Plaintiff's body or the remaining affirmative defenses.

*Camp*, 284 So. 2d 691, 695 (Fla. 1973). Meanwhile, a licensee is "one who enters upon the property of another for his own convenience, pleasure, or benefit." *Post*, 261 So. 2d at 147 (quotation omitted). Similarly, a trespasser is "one who enters the premises of another without license, invitation, or other right, and intrudes for some definite purpose of his own, or at his convenience, or merely as an idler with no apparent purpose, other than perhaps to satisfy his curiosity." *Id.* (quotation omitted).

The duty owed by one in possession or control of property to a person injured by a third-party criminal attack on the property is dependent on the injured person's relationship to the property. *Barrio v. City of Mia. Beach*, 698 So. 2d 1241, 1244 (Fla. 3d DCA 1997). "[W]here the material facts are not in dispute, the legal status of the person injured on the business premises is a question of law for the court." *Seaberg v. Steak N' Shake Operations, Inc.*, 697 F. App'x 941, 943 (11th Cir. 2017) (citation omitted). The visitor's status is determined as of the time of the injury. *Byers v. Radiant Grp., L.L.C.*, 966 So. 2d 506, 509 (Fla. 2d DCA 2007).

Plaintiff argues he was a public invitee because the parking lot was held open to the public for parking purposes. In support, Plaintiff points to Defendants' admissions that they did not have "No Trespassing" signs posted and that they never had Plaintiff trespassed from the premises prior to the incident as evidence that Plaintiff was permitted to park his car in the subject lot.[4] The Court is not persuaded. *See Arp v. Waterway E. Ass'n*, 217 So. 3d 117, 122 (Fla. 4th DCA 2017) ("[T]he absence of a 'No Trespassing'

---

[4] Plaintiff also relies on a purported agreement between Wells Fargo and the City of Sanford regarding public access to the subject parking lot. (*See generally* Doc.182-14). However, this agreement occurred after the date of Plaintiff's injury and is therefore irrelevant to the case at bar.

sign does not constitute an implied invitation by the owner. Nor can an implied invitation be inferred from the fact that others may have trespassed upon the . . . property over a substantial period of time." (citation omitted)). The record demonstrates that signs were posted indicating the premises, specifically the drive-thru service area where Plaintiff parked his car, was for use by Wells Fargo customers only. Plaintiff has failed to offer any evidence that he was either a Wells Fargo customer or doing business with Wells Fargo at the time of his injury. Rather, the record clearly demonstrates that Plaintiff parked his car in a drive-thru lane for his own convenience so that he could visit a bar across the street. Based upon the undisputed record evidence, the Court rejects Plaintiff's contention that he was an invitee at the time of his injury. *See Bell v. Circle K Stores Inc.*, No. 8:18-cv-1296-T-SPF, 2019 WL 5190907, at *3 (M.D. Fla. Oct. 15, 2019) ("[A]n individual entering the property for a purpose that serves only his or her personal convenience cannot reasonably believe that the owner has asked him or her to come onto the property for that specific reason."); *see also Seaberg*, 697 F. App'x at 943 (explaining that licensees enter property for their own convenience, while invitees enter for purposes connected with the business).

At best, Plaintiff can be classified as an uninvited licensee. *See Barrio*, 698 So. 2d at 1243–44 (holding visitor was an uninvited licensee on city beach at approximately 3:30 a.m. when she was shot while being robbed at gunpoint, where city's posted sign indicated that beach was closed between hours of midnight and 5:00 a.m. and the city did not provide lifeguard services during those hours). The duty owed to an uninvited licensee is to "refrain from wanton negligence or willful misconduct which would injure [him], to refrain from intentionally exposing [him] to danger, and to warn [him] of a defect

or condition known to the landowners to be dangerous when such danger is not open to ordinary observation by the licensee." *Id.* at 1244 (quoting *Lane v. Est. of Morton*, 687 So. 2d 53, 54 (Fla. 3d DCA 1997)).

"The issue of breach of duty is often considered a question for the jury, unless only one reasonable conclusion may be drawn from the facts in evidence." *Fla. Power & Light Co. v. Lively*, 465 So. 2d 1270, 1273 (Fla. 3d DCA 1985). Plaintiff argues Defendants breached their duty to Plaintiff by failing to warn him of reasonably foreseeable criminal attacks. However, Plaintiff's argument regarding the duty to warn is misplaced as he discusses the open and obvious doctrine as applied to invitees, rather than uninvited licensees. Regarding uninvited licensees, "the danger of crime and criminal assaults is an open and obvious danger for which there is no duty to warn." *Barrio*, 698 So. 2d at 1244.

Next, Plaintiff argues that Defendants, with the knowledge of previous criminal attacks in the parking lot and surrounding area, performed intentional misconduct by holding its parking lot open for public parking without implementing adequate security measures. Conduct rises to the level of willful and wanton misconduct when the conduct "is in reckless disregard of the safety of another." *Dyals v. Hodges*, 659 So. 2d 482, 484–85 (Fla. 1st DCA 1995) (quotation omitted). To show willful and wanton misconduct, "(1) the actor must have *knowledge*, actual or constructive, of the likelihood that his conduct will cause injury to other persons or property; and (2) the conduct must indicate a *reckless indifference* to the rights of others, that is, conduct which may be termed equivalent to an *intentional violation* of those rights." *Boyce v. Pi Kappa Alpha Holding Corp.*, 476 F.2d 447, 452 (5th Cir. 1973).

In support, Plaintiff cites to the Sanford Police Department crime statistics, as well as the occurrence of one shooting and one armed robbery in the three years prior to Plaintiff's shooting. However, Plaintiff has only demonstrated that Wells Fargo had knowledge of the 2016 shooting, which took place across the street. (Doc. 169-6 at 73:24–74:17, 290). This single incident of gun violence would not support a finding that Defendants performed a willful and wanton negligent act causing Plaintiff's injury, amounting to an intentional violation of Plaintiff's rights, and Plaintiff has not directed this Court to any other evidence to support his argument. *See Boyce*, 476 F.2d at 453 (holding that the trial court erred in submitting the issue of willful and wanton negligence to the jury where "the facts [did] not support a conclusion that defendant had a design, purpose, or intent to cause the injury . . . or that there was a knowing and intentional failure on defendant's part to perform such acts as might have prevented the injury"); *see also Bell*, 2019 WL 5190907, at *5. Therefore, the Court finds Defendants have shown that there is no evidence upon which a reasonable jury could find that they breached a duty to Plaintiff and Defendants are entitled to summary judgment.

## IV.   CONCLUSION

For the reasons set forth herein, it is **ORDERED** and **ADJUDGED** that Defendants' Motions for Summary Judgment (Doc. Nos. 169, 173) are **GRANTED** and Plaintiff's Motion for Partial Summary Judgment (Doc. 174) is **DENIED**. The Clerk is directed to enter judgment, in favor of Defendants and against Plaintiff, providing that Plaintiff shall take nothing on any of his claims against Defendants. Thereafter, the Clerk is directed to terminate all pending motions and close this case.

**DONE AND ORDERED** in Orlando, Florida on January 28, 2022.

WENDY W. BERGER
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record